```
 1  Tammy Hussin (SBN: 155290)
 2  HUSSIN LAW
    1302 N. Coast Highway 101, Suite 201
 3  Encinitas, CA 92024
 4  Tel: (877) 677-5397
    Fax: (877) 667-1547
 5  Tammy@HussinLaw.com
 6
 7  Attorney for Plaintiffs, Regina Martinez, Kevin Pine, Anthony Ercolani, Robert
    Schwartz, and Sarah Schwartz
 8
```

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| REGINA MARTINEZ, KEVIN PINE, ANTHONY ERCOLANI, ROBERT SCHWARTZ, and SARAH SCHWARTZ,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>SIRIUS XM RADIO, INC.; DOES 1-10,<br><br>　　　　　　　Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES: VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §227,** *et seq.*<br><br><br>**JURY TRIAL DEMANDED** |

　　　For this Complaint, the Plaintiffs, by and through their undersigned counsel, based on information garnered from Plaintiffs and investigations by their counsel, hereby state as follows:

　　　1.　This action arises out of repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. §227, et. seq. ("TCPA"), and This court has

1

original jurisdiction of this civil action as one arising under the laws of the United States. 28 U.S.C. §1331; *see*, *Mims v. Arrow Fin. Serv.*, LLC, 565 U.S. 132 S. Ct. 740, 181 L. Ed.2d 881 (2012).

2.   Jurisdiction also exists pursuant to 28 U.S.C. §1332 in that Plaintiffs and Defendant are each citizens of different states and the amount in controversy exceeds $75,000.

3.   Plaintiffs all satisfy Article III standing requirements, as all have suffered concrete injury in the form of invasions of privacy from defendant's repeated violations of the TCPA. *Van Patten v. Vertical Fitness Group*, D.C. No.3:12-cv-01614 (9th Cir., 2017).

4.   Venue is proper in this District pursuant to 28 U.S.C. §1391(b), in that Defendant regularly and systematically solicits to and enters into agreements with consumers within this judicial District, Plaintiff Regina Martinez resides in this district, and a portion of the acts giving rise to this action occurred in this District.

## THE PARTIES

5.   Plaintiff, Regina Martinez ("Martinez") is an adult individual residing in Artesia, California, and is a "person," as defined by 47 U.S.C. §153(39).

6.   Plaintiff, Kevin Pine ("Pine"), is an adult individual residing in Carlsbad, California, and is a "person," as defined by 47 U.S.C. §153(39).

7.   Plaintiff, Anthony Ercolani ("Ercolani"), is an adult individual residing in San Marcos, Texas, and is a "person," as defined by 47 U.S.C. §153(39).

8.   Robert and Sarah Schwartz (collectively the "Schwartz's") are adult individuals residing in Aventura, Florida, and they are each a "person," as defined by 47 U.S.C. §153(39).

9.   Defendant, Sirius XM Radio, Inc. ("Sirius"), is a nationwide provider of a paid subscription satellite radio service. Sirius is a Delaware corporation, with its principal place of business located in New York.

10. Sirius regularly and systematically solicits to and conducts business with consumers in this District, and throughout the United States.

## THE TELEPHONE CONSUMER PROTECTION ACT

11. The TCPA was enacted by Congress to protect the privacy rights of Plaintiffs and citizens nationwide. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012) ("Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Id*. at 784).

12. In enacting the TCPA, Congress intended to give consumers a choice as to how telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, §11.

13. Toward this end, Congress found that: "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* at §12

14. The FCC and numerous courts have consistently held that predictive dialers are automated telephone dialing systems under the TCPA because they have the "capacity to store or produce telephone numbers…" 2003 Report and Order, ¶132; *see, also, Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) ("To satisfy that definition, the equipment does not actually have to store or produce telephone numbers or to use a random or sequential number generator; it merely must have the capacity to do so.").

15. The TCPA requires any "autodialed or prerecorded calls…have either written or oral consent if made to wireless consumers." FCC-15-72A1_Rcd ("2015 FCC Order"), ¶12. (https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1_Rcd.pdf.).

## **SIRIUS IGNORES THE PROHIBITIONS OF THE TCPA**

16. The TCPA was specifically designed to prevent the illegal and intrusive solicitation calls like the ones described herein. Plaintiffs each experienced a nearly identical experience in their dealings with Sirius. Plaintiffs were each given three free months of Sirius radio when they purchased or leased their vehicles. Although Sirius had no written or oral consent from Plaintiffs, Sirius obtained their cellular numbers from the dealerships or the manufacturers and began autodialing each of them in an attempt to convert their free service into a paid Sirius subscription. Plaintiffs told Sirius representatives they were not interested in purchasing services, and told Sirius representatives to stop calling. Despite this, Plaintiffs nonetheless continued to receive annoying automated solicitation calls from Sirius in violation of the TCPA.

17. Apparently, Plaintiffs were not alone. In fact, Sirius embarked on a massive illegal telemarketing campaign by obtaining the phone numbers of millions of car buyers and leasees, and then autodialing them without their consent. The telemarketing scheme resulted in an enormous exposure to liability, and Sirius was called to defend a multitude of TCPA class actions. *See*, *Hooker v Sirius XM Radio, Inc.* Case No.: 4:13-cv-00003-AWA-LRL (E.D. VA); *Knutson v. Sirius XM Radio Inc.*, No. 12-cv-0418-AJB-DHB (S.D. Cal.), *Elikman v. Sirius XM Radio Inc.,* 11:15-cv-02093 (N.D. Ill.), and *Parker v. Sirius XM Radio Inc.*, 8:15-cv-01710-JSM-EAJ (M.D. Fla.) (collectively referred to as the "Sirius TCPA Class Actions").

18. The Sirius TCPA Class Actions were heavily litigated. Discovery revealed that Sirius XM, through several third-party calling vendors,

systematically placed repeated telemarketing calls to purchasers and lessees of vehicles that came with "free trial" Sirius XM subscriptions. *See, Hooker, supra,* Motion for Class Certification (Docket No. 141, p. 9, Sept. 29, 2015). Like Plaintiffs allege here, millions of vehicle purchasers and lessees received a "free trial," whether they wanted the service or not, and were then subjected to a barrage of telemarketing calls from Sirius XM, attempting to turn them into paying Sirius XM subscribers. *Id*. The class members had not provided their cellular numbers to Sirius and Sirius made the telemarketing calls without consent to do so. Despite the fact that the TCPA clearly prohibits placing autodialed telemarketing calls to cellular telephones without the called party's "express consent," Sirius' calling vendors used an ATDS to call consumers on their cellular telephones without obtaining any affirmative consent to such calls. *Id*.

19. After years of unsuccessfully defending the Sirius TCPA Class Actions, Sirius recently agreed to pay $35 million to collectively settle all of them (the "Sirius TCPA Settlement"). *See, e.g.*, https://www.siriusxmtcpasettlement.com.

20. The Sirius TCPA Settlement identified over ten million consumers who, like Plaintiffs, had received automated calls from Sirius without their consent in violation of the TCPA.

21. Plaintiffs each excluded themselves from the Sirius TCPA Settlement on a timely basis for the purpose of pursuing their individual claims as asserted herein.

22. Plaintiffs each received telemarketing calls from Sirius within the class period of February 8, 2008 and July 5, 2016, as defined in the Sirius TCPA Settlement.

23. In or around February of 2015, Plaintiff, Regina Martinez, purchased a Kia Optima that included a three-month free trial of Sirius XM radio programming. Shortly thereafter, Sirius placed automated calls to Ms. Martinez on

her cellular telephone for the purpose of encouraging her to purchase a Sirius subscription. Ms. Martinez never provided her cellular number to Sirius and never provided consent to Sirius to be called. Ms. Martinez told Sirius she was not interested in purchasing a subscription with Sirius, but Sirius nonetheless continued to autodial her. Ms. Martinez answered a number of calls in an effort to get Sirius to stop calling. Ms. Martinez told a number of representatives to stop calling, but Sirius nonetheless continued to call.

24. Specifically, in or around February of 2010 and again in April of 2013, Plaintiff, Kevin Pine, leased two Nissan Maximas. Shortly after leasing both vehicles, Sirius placed automated calls to Mr. Pine on his cellular telephone for the purpose of encouraging him to purchase Sirius subscriptions. Mr. Pine never provided his cellular number to Sirius and never provided consent to Sirius to be called. On both occasions, Mr. Pine told Sirius he was not interested in purchasing a subscription, but Sirius nonetheless continued to autodial him. Mr. Pine answered a number of calls in an effort to get Sirius to stop calling and told a number of representatives to stop calling, but Sirius nonetheless continued to call. Mr. Pine has been on the National Do Not Call registry since 2008.

25. In or around March of 2014, Plaintiff, Anthony Ercolani's, grandmother purchased a Kia that included a three-month free trial of Sirius XM radio programming. Shortly thereafter, Sirius called Mr. Ercolani on his cellular telephone with automated calls for the purpose of encouraging him to purchase a Sirius subscription. Mr. Ercolani told Sirius he was not the owner of the Kia, and directed Sirius to stop calling several times. Sirius nonetheless continued to place automated calls to Mr. Ercolani.

26. From approximately 2010 to 2015, Plaintiffs, Robert and Sarah Schwartz, purchased multiple vehicles, including two Volkswagens, a Hyundai and a Mercedes Benz. The Schwartz' never provided their cellular numbers to Sirius, and did not otherwise consent to be called. The vehicles purchased by the

Schwartz' all included a three-month free trial of Sirius XM radio programming. Shortly after purchasing the vehicles, Sirius bombarded the Schwartz's cellular telephones with automated calls in an attempt to convince them to purchase a Sirius subscription. The Schwartz's repeatedly told Sirius they were not interested, and directed representatives to stop calling dozens of times. Despite demanding that the calls stop, Sirius nonetheless barraged the Schwartz's cellular telephones with automated calls.

27.  Sirius, by and through its agents, executed its unlawful calling campaigns to Plaintiffs, and millions of other consumers, *en masse,* making calls to cellular telephones using an ATDS and a Predictive Dialer without regard to the prohibitions of the TCPA. This "predictive dialing" technology automatically placed calls to Plaintiffs without human intervention, forcing them to wait until the automatic dialer connected their calls to a live representative.

28.  The calls Plaintiffs received from Sirius have all the earmarks of the use of an ATDS and a Predictive Dialer. When Plaintiffs answered the calls from Sirius, there were no representative immediately available with whom they could speak. Plaintiffs sometimes answered the calls and waited in silence before being connected to representatives. Sometimes Plaintiff's answered and Sirius' phone system disconnected their calls without ever transferring the calls to a representative. Other times, Plaintiffs answered and heard an automated voice prior to reaching a live representative.

29.  The calls from Sirius intruded on Plaintiffs' right to be free from unwarranted invasions. By ignoring Plaintiffs' repeated demands to stop calling, Sirius caused Plaintiffs, and each of them, frustration, aggravation, and distress. The calls from Sirius interfered with Plaintiffs' ability to use their cellular telephones in the manner in which they were intended, interrupted important calls, wasted their time, interfered with work days, disrupted them while driving, and disturbed quiet evenings and family time.

# COUNT I
**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT – 47 U.S.C. §227, ET SEQ.**

30. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

31. Sirius, by and through its agents, called Plaintiff's cellular telephone using an automated telephone dialing system ("ATDS") and/or an artificial or prerecorded voice ("Automated Calls").

32. Plaintiffs did not provide their cellular numbers to Sirius, did not provide consent to the car dealerships to release their number to Sirius, and therefore Sirius never had consent to place any Automated Calls to Plaintiffs.

33. By making Automated Calls to Plaintiffs, and each of them, without their consent and over their objections, Sirius violated 47 U.S.C. §227(b)(1)(A)(iii).

34. Sirius knowingly and willfully violated the TCPA by placing Automated Calls to Plaintiffs, knowing they had no consent to do so. Even after being put on actual notice by Plaintiffs that they did not wish to be called, Sirius nonetheless flagrantly continued its barrage of telemarketing calls. As such, Sirius should be subject to treble damages for each call made in knowing and willful violation of the TCPA pursuant to 47 U.S.C. §227(b)(3)(C).

35. Sirius, by and through its agents, used telephone dialing systems that have the capacity to store randomly or sequentially generated telephone numbers and randomly or sequentially dials telephone numbers.

36. The calls from Sirius to Plaintiffs were not placed for "emergency purposes" as defined by 47 U.S.C. §227(b)(1)(A)(i).

37. Plaintiffs are entitled to damages as a result of Sirius' TCPA violations.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that judgment be entered against the Defendant:

1. As a result of each call made in violation of the TCPA, Plaintiffs, and each of them, are entitled to an award of $500.00 in statutory damages per each negligent violation, or for each knowing or willful violation, an award of treble damages in an amount up to $1,500.00 pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. §227(b)(3)(C);

2. As a result of placing more than one call per year to Plaintiff Kevin Pine, who's telephone number was listed on the National Do Not Call Registry, Sirius is in violation of 47 CFR 64.1200(c)(2), entitling Mr. Pine to an additional award of up to $1,500 per call pursuant to 47 U.S. Code §227(c)(5); and

3. Such other and further relief as may be just and proper.

DATED: February 6, 2017			TAMMY HUSSIN

					By: /s/ Tammy Hussin
					Tammy Hussin, Esq.
					Hussin Law
					Attorney for Plaintiffs